ORIGINAL

RECEIVED
FEB 0 8 2013
PRO SE OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JAMES MCGOWN, RUDOLPH MITTASCH
AND ANN MITTASCH

               Plaintiffs                            **COMPLAINT**

     v.

                                         **JURY TRIAL DEMANDED** WEINSTEIN, J.
                                                 GOLD M.J

LEGEND YACHT AND BEACH CLUB HOMEOWNERS
ASSOCIATION INC, TOTAL COMMUNITY
MANAGEMENT CORP, FJC SECURITY SERVICES     **CV 13**        **00748**
INC., FRANK CALIFANO, BEVERLY MEARS, LYNNE
ALBEQUIRK, ARNIE GOLDSTEIN, JIM FANNING,
MYRA KRALSTEIN DAN KNOPF, ABRAMS
GARFINKEL MARGOLIS, BERGSON LLP, BARRY
MARGOLIS, JOHN DOE NO'S 1-10   -Gowanus Inn Inc
-------------------------------------------------------X

1.  Plaintiffs, Pro Se, by way of complaint for various causes of action against Defendants,

allege (with actual knowledge or upon information and belief) as follows:


## Preliminary Statement

2.  Defendants seized the subject premises and denied Plaintiff's their legal, equitable, and

actual possession without due process and in blatant violation of FDCPA. Plaintiffs bring this

action to gain access to their home and recover damages from Defendants for their actions.


## Parties

**Plaintiffs**

3.  Plaintiff Rudy and Ann Mittasch are husband and wife and have lived in the subject

premises since the early 2000's. It has been their primary residence and remained their

primary residence through the actions of Defendants and until they were forceably removed

from the premises by the police.  They maintain an address of 1299 Corporate Drive Apartment

402, Westbury NY 11590.

4.  James McGown is also an occupant of the property and the 100% owner of the fee

owner of record, Gowanus Inn Inc, with an address of 311 West Broadway, 8C, NY NY 10013.

**Defendants**

5.  Legend Yacht and Beach Club Homeowners Association (Hereinafter "Legend"), Inc. is a

corporation organized and existing under the laws of the State of New York and has an address

filed with the secretary of state of 2375 Bedford Avenue, Bellmore, New York, 11710.

6.  Total Community Management Corp. (hereinafter _TCM")is the management company

for Defendant Legend Yacht Club and Marina and has corporate offices at 660 Newbridge Road,

East Meadow, New York, 11554.

7.  FJC Security Services Inc (Herinafter "FJC") is a corporation organized and existing under

the laws of the State of New York with an address of 275 Jericho Turnpike, Floral Park New

York, 11001.

8.  FJC is the security company who hires the individual security guards and manages the

security system for the subject property.  FJC

9.  Frank Califano is the chairman or Chief executive Officer of FJC and is directly

responsible for FJC's and its employees failure to comply with relevant laws.

10. Beverly Mears is the property manager for the project and has an address of C/O Total

Community Management 2375 Bedford Avenue, Bellmore, NY 11710.

11. Lynne Albequirk is the president of the homeowners association and has an address of 4 Pembroke Drive, Glen Cove NY 11542.

12. Arnie Goldstein is the vice-president of the homeowners association and maintains an address of C/O 2375 Bedford Avenue, Bellmore, New York, 11710.

13. Jim Fanning is the treasurer of the homeowners association and maintains an address of C/O 2375 Bedford Avenue, Bellmore, New York, 11710.

14. Myra Kralstein is the secretary of the homeowners association and maintains an address of C/O 2375 Bedford Avenue, Bellmore, New York, 11710.

15. Dan Knopf is a member of the homeowners association and maintains an address of C/O 2375 Bedford Avenue, Bellmore, New York, 11710.

16. Abrams Garfinkel Margolis, Bergson LLP is a law firm organized and existing in the City of New York, and State of New York.  It has a principle New York address of 1430 Broadway, 17th Floor New York, NY 10018.

17. Barry Margolis is a member of the firm Abrams Garfinkel, Margolis, and Bergson LLP.  He has an office address of C/O Abrams Garfinkel Margolis, Bergson LLP  1430 Broadway, 17th Floor New York, NY 10018.

18. Mr. Margolis is named herein by virtue of his contribution to Defendants actions not limited to demanding payment from Plaintiff McGown and advising McGown that neither McGown nor Rudolph or Ann would be allowed access to the property until payment was made on current and outstanding condo fees.  Margolis also advised McGown that Defendants were within their rights to deny access to Plaintiff McGown by virtue of the alleged monies owed by the fee owner.

19. John and Jane Doe no's 1-10.  These parties are named herein to designate persons or companies whose exact identity is unknown to Plaintiff at the time this action is commenced.

20. These parties include at least 6 security guards and their direct supervisors who facilitated the physical blockade of the subject premises.  These parties also denied access to Plaintiffs and falsely reported trespass to the police causing the police to force Plaintiffs from the premises for fear of arrest.

21. Gowanus Inn Inc (hereinafter "Gowanus") is the fee owner of the subject property.  It is a corporation organized and existing under the laws of the state of New York and has a principle address of 311 West Broadway, unit 8c NY NY 10013.

22. Gowanus is a corporation wholly owned by Plaintiff James McGown.  It is included here as Defendant because Plaintiff James McGown recognizes that it is a necessary party but Plainitff cannot represent the corporation due to McGown not being an attorney.

23. Gowanus will obtain its own counsel, and appear in the action soon.  It will likely assert cross claims against co-defendants.

## Juristiction

24. Juristiction is proper pursuant to FDCPA, ADA and the plain language of the Constitution of the United States of America.  Plaintiff's also request that this court invoke pendant party jurisdiction of the underlying and related state court causes of action.

25. Venue is proper in the Eastern District of New York as that is the physical location of the property in question, the business and personal addresses of all defendants.

## Subject Premises

26. The subject premises is a single family home together with a share of undivided common elements.

27. These common elements include a marina, yacht club, swimming pool, club house, tennis courts and various other amenities.

28. The overall condominium community is a development that was built on the estate of one of the founders of Metro Goldwyn Mayer (MGM).

29. Some 40 acres were purchased by a developer at the tip of a peninsula flanking Glen Cove.

30. The developer built approximately 45 homes on the estate.  Each home was deeded a parcel of land together with an undivided interest in the remainder of the property not allocated to one of the other properties.

31. Many of the homes (including the subject premises) were also deeded a boat slip in the marina.

32. A gate-house was built at the entrance and the entire property is enclosed for security. The properties in the development would be known as a "gated community".

## Background

**Plaintiff purchases dream home for golden years**

33. On or about the early 2000's  Plaintiff Rudy and Ann Mittasch had retired and purchased their dream home at 22 Pembroke Drive.

34. They are nearly the first owners in this new development and pick all of the details of the unfinished house so it meets their exact dream specifications.

35. Mr. and Mrs Mittasch enjoy retirement in their new home.

36. Mr. and Mrs. Mittasch had enjoyed successful careers and wished to enjoy a grand home with their children and grandchildren. This home has a pool facility, gym, tennis court and marina that will all be hugely enjoyable to share with their children and grandchildren.

**Plaintiff transfers property to daughter**

37. As part of a prudent estate plan, Plaintiff's Rudolph and Ann Mittasch transfer the home to their daughter Donna Trentini.

38. While Donna becomes the fee owner, it is the parties' intent that Rudolph and Ann remain the occupants as tenants in the property as a life estate.

39. To complete the sale and pay off Rudolph and Ann Mittasch's debt on the property, Donna Trentini takes out a mortgage with ABM AMRO Mortgage Group Inc.

40. Donna becomes the individual owner in her own capacity and Rudolph and Ann Mittasch remain in occupancy

41. Defendants are aware of this arrangement and acknowledge Rudolph and Ann Mittasch as tenants of the property.

**Defendant Legend demands payment and files suit**

42. On or about June 2009 Defendant Legend demands payments for monies alleged due for common charges.

43. Trentini disputes the amount of the charge.

44. Defendant Legend causes a lien to be filed in the county records and commences an action Styled Board of Directors of Legend Yacht and Beach Club Homeowners Association, Inc vs Donna Trentini Nassau Supreme 025634-2009.

**Defendant Legend initiates partial blockade of property**

45. By letter dated on or about June 2009, the board of managers first begins a partial restriction of use of common areas for occupants of 22 Pembroke Drive.

46. Access is restricted to the common areas including the pool, marina, beach area and clubhouse.  Defendants also advise that maintenance that should be included to all unit owners will not be provided for 22 Pembroke Drive, Glen Cove NY.

47. This includes snow removal, maintenance of common areas and the security entrance.

48. Defendants interrupt egress by restricting access through the security gate at the property entrance.

**The Supreme Court Case is dismissed With Prejudice**

49. Trentini answers the complaint filed in New York Supreme Court, County of Nassau.  She enters affirmative defenses.

50. She advises Defendants that she does not have the cash on hand to pay the arrears.  She concedes that money is due but disputes the amount.

51. She further advises Defendants that arrears will be paid from the proceeds of a sale. She notifies Defendants of her intent to offer the property for sale.

52. The case is the subject of limited motion practice.

53. On or about March 14, 2012 the action is dismissed with prejudice.  Legend's claim is defeated in a court with competent jurisdiction.  A copy of the order dismissing the action is attached as Exhibit .

**Defendants take the road of self-help to enforce payment of the alleged debt**

54. Instead of appealing or refilling the action, or asking the court to re-consider, Legend strengthen's its blockade on the property.

55. Legend directs Defendants TCM and FJC to limit the access of any party attempting to enter the property.

56. A memo is circulated and appears in the training manual for the security guards directing FJC employees (the security guards) not to open the gates.

57. The security guards are further directed not to allow visitors to the premises.

58. The basis for the restricted use is that Rudolph and Ann Mittasch are delinquent on the payment of common charges and money is due.  Therefore, no parties are allowed to enter the premises.

59. The only way for anyone to get to the house is for Rudolph or Ann Mittasch to drive up to the back side of the security gate and use the weight of the car to trigger the opening mechanism of the gate.

60. Once the gate is opened, the visitor has to quickly pass through the gate before it closes and risks vehicular damage in the event that the gate closes too fast.

61. Rudolph and Ann Mittasch are virtually isolated from visitors.

**Rudolph and Ann Mittasch are embarrassed and forced to relocate**

62. The inability to have friends enjoy free access to the property limits Rudolph and Ann Mitasch's eagerness to host parties or invite friends over.

63. Ms Ann Mitasch is elderly, walks with a cane and cannot get to the gate to allow visitors to enter.  She does not drive at all.

64. Plaintiffs Rudolph and Ann Mittasch are also embarrassed in front of the neighbors who have been recipient of the false roomer that they are in default of monies due.  Encounters with neighbors at the pool or other common facilities are uncomfortable.

65. As a direct result of Defendant's actions, Rudolph and Ann Mittasch are forced to relocate to safer environment.  They rent an apartment near their daughter.


**Daughter Donna Trentini Offers the property for short sale**

66. Donna Tentini offers the property for sale.  Since the market has declined since she mortgaged the property, she knows this will require a short sale.

67. A real estate broker familiar with the short sale process is contracted to sell the property and help coordinate the short sale process.

68. Meanwhile Donna had fallen behind on the first mortgage and an action was commenced by the alleged holder of the note and assignee of the mortgage in an action styled CitiMortgage Inc vs Donna Trentini et al Nassau County Supreme Court 09-008374.

69. This action was eventually withdrawn and a second foreclosure action is filed on behalf of the purported successor to CitiMortgage in an action styled Residential Credit Solutions, Inc vs Donna Trentini Nassau County Supreme Court index no 11-5902.

70. Defendants refuse access to potential buyers, brokers and agents. The only way for Trentini to show the property is for someone to drive to the gate and trigger the opening mechanism from the inside and coordinate with the party entering before the gate closes on the party entering.

71. This interference by Defendants with access to the property limits the marketability and draws question to potential buyers about the Condo and the Sellers.

72. Finally the broker on the deal secures a buyer at a price below market. The bank takes nearly 12 months to accept the offer. Once the bank approved the offer, Defendants refused to release their lien even though there had been an adjudication that the money was not due.

73. The sale was never consummated.

**Gowanus Inn Inc purchases the fee interest in the property**

74. Rudolph and Ann Mittasch, together with their daughter, are caught between a rock and a hard place. They cannot use the property, they cannot sell the property, and the bank is stagnant in the foreclosure process. James McGown offers $20,000 for the fee interest together with an undertaking to help Trentini with residual liability of the debt secured by the property.

75. James McGown is in the business of purchasing properties whose title is clouded and marred in various claims.

76. Unfortunately, there are many abandoned properties in todays real estate environment. These properties often have *in rem* claims well in excess of the market value of the property.

77. Banks are failing to prosecute their foreclosures and properties are abandoned by the fee owners and the lienholders.

78. Such properties damage the communities they are in and serve to reduce value for neighbors.

79. Adding to the complication, many banks engage in unsound or fraudulent foreclosure practices that complicate the foreclosure process.

80. McGown's business model is to purchase the fee interest in these properties and then address the myriad of claims against the properties and, hopefully, realize a profit from the transaction.

81. McGown is the principle of East River Mortgage Corp and 122 First Pizza Inc, two companies who have filed bankruptcy in the Southern District of New York and are currently pending in front of Judge Gerber.

82. McGown made an offer to purchase 100% fee interest in the property for $20,000 subject to all liens and encumberances of record.

83. The transaction closed and title was transferred to a company wholly owned by McGown; Gowanus Inn Inc on or about August 23, 2012.

84. James McGown took possession of the property and the keys were delivered to McGown.

**Defendants Welcome the New Owner**

85. James McGown shortly thereafter presented a deed to the guard and advised the guard that Gowanus was the new owner and that McGown had taken possession and was to shorltly move in.

86. The security guard asked if McGown would talk to the president of the board Lynne Albequirk.

87. Lynne Albequirk welcomed Mr McGown and exchanged contact information so a welcome package could be sent out to McGown.

**The Board Changes its Mind and Denies Access to McGown**

88. McGown returned to the property and again the security guard asked if Mr McGown would talk to Ms. Albequirk advised McGown that there was a lien outstanding and that the entirety of the lien would have to be paid in full before McGown could move in.

89. As a curtesy McGown would be allowed in this one time, but payment would have to be made shortly to re-enter the property.

90. McGown questioned the lien and offered to review the lien and amount due.  Ms Albequirk offered to waive late fees and penalties if the balance was paid immediately.

91. The next time McGown came to the property, the security guard denied access entirely and refered McGown to Beverly Mears.

92. Ms. Mears told McGown that in no event shall McGown, nor Rudolph or Ann be allowed into the property.

**Barry Margolis phones McGown to demand payment**

93. Defendant Barry Margolis phoned Mr. McGown and advised McGown that he would not be allowed into occupancy until the fees were paid to the condo board.

94. He also advised McGown that it was within the Board's rights to deny access for failure to pay.

95. Mr. McGown advised Mr. Margolis that such a demand would violate FDCPA and that he may be guilty as well for making the demand for payment.

96. Mr. Margolis responded "Living in a community is different" "you must pay to be allowed into the community.  You will not be allowed to enter the property until fees are paid".

**The Board Completes the Blockade of the Home**

97. Meanwhile, Defendants improperly report trespass to the police and insist that Rudolph and Ann Mittasch are have no legal right to enter the property.

98. Mr Mittasch uses his 'clicker' to enter the main security gate and Defendants call the police and report unlawful entry and trespassing.

99. When the police arrive, Defendants advise the police that Mr. Mittasch has no right to be in the property and there is a new owner.

100.     Under threat of arrest, Mr. Mittasch leaves the premises.

101.     Ms Lynne Albequirk demands that Mr. Mittasch surrender the 'clicker' and advises police that it is the property of the Board.

102.     Mr. Mittasch surrenders the 'clicker' and Lynne Albequirk signs an agreement to allow Mr. Mittasch to enter the premises, on 15 minutes notice, to collect any belongings he may have in the house.

## As for a First Cause of Action

## Due Process

103.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-102, inclusive, above.

104.    Defendants actions constitute a taking of property without due process as guaranteed by the Constitution of the United States.

105.    Defendants sought a remedy in a court with proper jurisdiction to recover monies claimed due.  In that action they did not sue to foreclose or for any remedy against the property or the Plaintiff's named herein.

106.    Had they sued to foreclose, they would have had the opportunity to take lawful possession of the property through a judgment of foreclosure and sale and a judicial auction sale.

107.    They did not do so and never obtained a warrant of eviction or a judgment of possession or even an adjudication that money was due.

108.    In fact, the action brought by Defendants was dismissed with prejudice and can have no adverse effect on the Plaintiffs right to occupy the subject premises.

109.    For the Board to turn to self-help is a blatant violation of the protections of the United States Constitution.

## As For a Second Cause of Action

## FDCPA

110.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-109, inclusive, above.

111.     The Fair Debt Collection Practices Act protects consumers from unfair collection practices of creditors.

112.     Specifically, section 806 protects Harrassment or abuse.  Plaintiff's submit that the entirety of the communication between Defendants and Plaintiffs is protected by this section and that the court will find the "Harassment and Abuse" to be willful and deliberate.

113.     Section 808 "Unfair Practices" section (6) specifically protects "Taking or threatening to take any nonjudicial action to effect dispossession"

114.     Section 807 (5) prohibits "The threat to take any action that cannot legally be taken".

115.     Additionally, Plaintiffs allege that Defendants communication with Plaintiffs did not meet the disclosure requirements of the act.

116.     Plaintiff believes these examples are compounded by others that renders the entirety of Defendants actions subject to claims for violations of the FDCPA.


### As for a Third Cause of Action

#### ADA

117.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-116, inclusive, above.

118.     Ms Mittasch is not able to drive a car, walks with a cane and cannot physically get to the front gate to open it in the event a visitor comes.

119.     Upon information and belief, Defendants actions to restrict Ms Mittasch's use of her home is a violation of the ADA.

### As for a Fourth Cause of Action

### Tresspass

120.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-119, inclusive, above.

121.     The gist of an action for trespass is a violation of possession, not challenge to title *Borland v. Sanders Lead Co.*, 369 So. 2d 523 (Ala. 1979).

122.     As in *AmSouth Bank, N.A. v. Mobile*, 500 So. 2d 1072 (Ala. 1986) courts have found that there are four points to determine if there is trespass: 1) an invasion affecting an interest in the exclusive possession of his property; 2) an intentional doing of the act which results in the invasion; 3) reasonable foreseeability that the act done could result in an invasion of plaintiff's possessory interest; 4) and sustain damages.

123.     If the court determines that plaintiff's had the right to possession, then the Defendants are clearly liable for trespass.

### As for a Fifth Cause of Action

### Harrassment-Breach of Warranty of Habilitability

124.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-123, inclusive, above.

125.     Plaintiffs borrow from the landlord tenant cases and allege that the Defendants are guilty of harassment and breach of warranty of habitability as custodians of the common elements of the subject property.

### And As for s Sixth Cause of Action

### Illegal lockout/unlawful eviction

126.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-125, inclusive, above.

127.     Plaintiffs enjoy a right of possession to the subject premises.  The willful and wonton action of the Defendants resulted in a constructive (if not actual) eviction.

128.     Such an eviction without review from a court of competent jurisdiction and without proper notice constitutes an illegal lockout and unlawful eviction.

129.     If Defendants are found guilty of such a cause of action, Defendants would be liable for treble damages and legal fees.

### And as for a Seventh Cause of Action

### Quite Title

130.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-129, inclusive, above.

131.     Section 1501 of Article 15 of the New York Real Property Actions and Proceedings Law (RPAPL) allows an action to be commenced in a court with competent jurisdiction to determine claims of parties that may be adverse.

132.     This action is brought by this section of code to bring to the court the question of Plaintiff's rights to the subject property.

### And as For an Eight Cause of Action

### Interrupt Adverse Possession

133.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-132, inclusive, above.

134.     Defendants have seized property with color of right and in an open and notorious fashion.

135.     This action is brought to insure that Defendants cannot claim Adverse Possession pursuant to NY Code Article 5.

### And As for a Ninth Cause of Action

### Theft or Conversion

136.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-135, inclusive, above.

137.     Possession of the subject premises belonged to Plaintiffs.  By willful and wonton acts of Defendants that property was seized.

138.     Plaintiffs bring this action to recover what is theirs and for damages that ensued.

### And as for a Tenth Cause of Action

### Breach of Contract—Count 1-X

139.      Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-138, inclusive, above.

140.      Defendants are liable for breach of contract in that Lynne Albequirk offered limited possession to Rudolph Mittasch in exchange for his 'clicker' and then refused to honor the contract.

141.      Defendants have a contractual duty to perform the duties of the Board.  There was a contractual agreement to perform certain maintenance on the subject premises.  There was a contract that the undivided interest of the common elements would be used by all members of the Condominium association and Tenants.  Defendants breached these contracts.

142.      Discovery will likely uncover contractual obligations that Defendants have that are yet unknown to Plaintiffs.

### And as For an Eleventh Cause of Action

### Breach of Covenant of Good Faith and Fair Dealing

143.      Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-143, inclusive, above.

144.      Upon information and belief, Defendants actions violate New York's covenant of good faith and fair dealing in their management of the property, in their seizure of the common elements, their failure to provide ammenitites necessary for the comfortable use of the property.

145.      Discovery will flush out the avenues of breach and the extent.

## And as for a Twelfth Cause of Action

### Fraud

146.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-119, inclusive, above.

147.    Plaintiff's allege that the Board can legally prevent Plaintiffs from entering the property. This is false.

148.    Defendants allege that the Plaintiffs have no right to the subject property.

149.    Defendants denied access by Plaintiffs of the subject property.

## And as for a Thirteenth Cause of Action

### Breach of Fiduciary Duty

150.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-149, inclusive, above.

151.    Defendants have a fiduciary to each and every resident, occupant, owner or other rightful party of the Condominium.

152.    Defendants failed in that duty and Plaintiffs suffered damages accordingly.

## And as for a Fourteenth Cause of Action

### Failure to Properly Train and Supervise Employees

153.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-152, inclusive, above.

154.     Defendants failed to properly train security guards and employees of the Board in the performance of their duties.

155.     As a result of Defendants failure to properly train and supervise its employees, Plaintiffs suffered damages.

### And as for a fiftheenth Cause of Action

### Unfair and Deceptive Business Practices

156.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-155, inclusive, above.

157.     The method by which Defendants took possession and deprived Plaintiffs their right to the subject property, upon information and belief, constitutes a violation of New York's Unfair and Deceptive Business Acts doctrine.

WHEREFORE, Plaintiffs respectfully request that judgment be entered:

a) Permanently enjoin Defendants from interfering with Plaintiffs' quiet use and enjoyment of the subject property without an order from a court with competent jurisdiction.

b) Plaintiffs be awarded damages to be determined at trial in conjunction with the causes of action herein described.

c) Any other relief the court deems just and proper.

By:

James McGown

Rudy Mittasch

Ann Mittasch